Joya Manjur (CA Bar No. 348160)
Elena Saxonhouse (CA Bar No. 235139)
Andrea Issod (CA Bar No. 230920)
2101 Webster Street, Suite 1300
Oakland, CA 94612
(510) 221-6342
joya.manjur@sierraclub.org
elena.saxonhouse@sierraclub.org
andrea.issod@sierraclub.org

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| SIERRA CLUB,<br><br>        Plaintiff,<br><br>vs.<br><br>U.S. DOGE SERVICE<br><br>and<br><br>U.S. DOGE SERVICE TEMPORARY ORGANIZATION,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Freedom of Information Act and Administrative Procedure Act) |

Plaintiff Sierra Club, through counsel, alleges as follows:

**<u>INTRODUCTION</u>**

1.      Defendant agencies U.S. DOGE Service ("USDS") and U.S. DOGE Service Temporary Organization ("USDS TO") have violated the Freedom of Information Act ("FOIA") by refusing to produce communications between agency officials and external parties who may be influencing government decision-making.

2.      Since January 2025, USDS and USDS TO have directed sweeping changes across the federal executive branch, working to implement President Trump's Department of Government Efficiency ("DOGE") agenda.

3.      USDS and USDS TO have been involved in the termination of thousands of federal employees, suspension of millions of dollars in federal funding, and infiltration of sensitive information systems at numerous federal agencies. They have operated without transparency, leaving the public without a clear understanding of their structure, operations, and motivations.

4.      Sierra Club is the nation's oldest grassroots environmental organization dedicated to protecting public health and the environment. Sierra Club and its members have a longstanding interest in governmental accountability and transparency, and educating and mobilizing the public around environmental and public health issues.

5.      To further those interests, Sierra Club submitted a FOIA request to USDS and USDS TO on July 2, 2025 seeking communications between agency officials and a list of external parties, and sought expedited processing of its request and a fee waiver.

6.      FOIA required USDS and USDS TO to decide, within ten calendar days, whether to grant Sierra Club's request for expedited processing, and to provide Sierra Club with a determination within twenty business days about whether responsive documents exist, whether they will release

them, and whether they will grant a fee waiver. FOIA required USDS and USDS TO to produce responsive documents promptly thereafter.

7. USDS and USDS TO have failed to comply with the deadlines required by FOIA. They have not made any determination on Sierra Club's request and have not conducted a search for responsive documents, produced any documents, nor provided Sierra Club with any explanation for withholding documents. They have also violated FOIA's requirements to designate a Chief FOIA Officer and establish a system for requesters to track FOIA requests.

8. Given the agencies have not responded to any FOIA requests they have received and have failed to comply with FOIA's procedural requirements, based on their erroneous position that they are not an agency subject to FOIA, Defendants are engaged in a policy and practice of failing to comply with FOIA requirements.

9. Sierra Club therefore brings this action seeking injunctive, declaratory, and other appropriate relief under FOIA, 5 U.S.C. § 552 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to remedy Defendants' violations of the law.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

10. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

11. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff Sierra Club has its principal place of business in Oakland, California.

12. For the same reason, intra-district assignment is proper in the Oakland Division. *See* Civil L.R. 3-2.

13. This Court may issue a declaratory judgment, provide injunctive relief from withholding records and order the production of such records, and grant other equitable relief as the Court may deem just and proper. 5 U.S.C. § 552(a)(4)(B); *id.* §§ 705-06*;* 28 U.S.C. §§ 2201-02.

14.     This Court may award attorney fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

**PARTIES**

15.     Plaintiff Sierra Club is incorporated in the State of California as a nonprofit public benefit corporation with headquarters in Oakland, California. Sierra Club is the nation's oldest environmental grassroots organization and has more than 600,000 members nationwide. Sierra Club's mission is to protect and preserve the places where people live, work, and play. Sierra Club's members are dedicated to exploring, enjoying, and protecting the wild places of the earth; practicing and promoting the responsible use of the earth's ecosystems and resources; and educating and enlisting humanity to protect and restore the quality of the natural and human environment.

16.     Sierra Club submitted the FOIA request at issue in this case to USDS and USDS TO in support of its mission and to further Sierra Club's long-standing interest in government accountability and transparency.

17.     Sierra Club routinely uses FOIA to obtain information from federal agencies, which Sierra Club's legal and policy experts analyze in order to inform its members and the public about environmental and public health issues. Sierra Club regularly conveys important information to its members and the public through press releases and publications with wide circulation, such as *Sierra Magazine*, as well as by releasing the documents obtained through FOIA requests on its website and through another organization's publicly searchable database (https://edgifoia.toxicdocs.org/). Sierra Club also uses information obtained through FOIA requests to support its advocacy for policies that protect public health and the environment.

18.     Sierra Club brings this action on its own behalf and on behalf of its members. Sierra Club and its members have been and continue to be injured by USDS and USDS TO's failure to respond to Sierra Club's requests within the statutory timeframes mandated by FOIA and promptly produce non-

COMPLAINT

exempt records, as well as by their failure to comply with FOIA's requirements to designate a Chief FOIA Officer and establish systems for requesters to track FOIA requests. Defendants have failed to provide access to information about the status of Sierra Club's FOIA request and have withheld requested communications between government officials and the parties outside government that may be influencing decisions to cut funding and staff at agencies with statutory mandates to protect public health and the environment. This impedes Sierra Club's mission to educate the public about critical and time-sensitive issues related to public health and the environment and advocate for protective policies. The requested relief will redress these injuries.

19.     Defendant USDS is an establishment in the executive branch of the United States government, and an agency of the federal government under 5 U.S.C. § 552(f).

20.     Defendant USDS TO is an establishment in the executive branch of the United States government, and an agency of the federal government under 5 U.S.C. § 552(f).

21.     For purposes of this suit, Defendants U.S. DOGE Service and U.S. DOGE Service Temporary Organization are referred to collectively as "USDS."

22.     As discussed below, USDS is subject to FOIA because it exercises substantial authority independent of the President.

23.     On information and belief, USDS has possession and control of the requested records at issue.

**STATUTORY FRAMEWORK**

*The Freedom of Information Act*

24.     FOIA was enacted to protect citizens' "right to be informed about what their government is up to." *U.S. Dep't of Just. v. Rep. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors

accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute was intended "to permit access to official information long shielded unnecessarily from public view and … to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973).

25.    FOIA defines an agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," 5 U.S.C. § 551(1), including "any executive department . . . or other establishment in the executive branch of the Government (including the Executive Office of the President)." *Id.* § 552(f)(1). Courts have determined that an entity within the Executive Office of the President is an "agency" subject to FOIA if it wields "substantial independent authority in the exercise of specific functions." *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).

26.    FOIA requires that federal agencies promptly release requested records in their possession to the public, unless a statutory exemption applies. 5 U.S.C. § 552(a)-(b).

27.    To make it easier for public interest groups like Sierra Club to access government records, FOIA requires agencies to provide documents without charge or at a reduced charge where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

28.    Within twenty business days of an agency's receipt of a FOIA request, the agency must determine whether responsive documents exist and whether it will release them. 5 U.S.C. § 552(a)(6)(A)(i). The agency must "immediately notify" the requester of "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I).

29.    FOIA also requires agencies to promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as in

"other cases determined by the agency." *Id.* § 552(a)(6)(E)(i). FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

30.     Agencies must make a determination on requests for expedited processing within 10 calendar days. 5 U.S.C. § 552(a)(6)(E)(ii)(I). If an agency grants expedited processing, it must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

31.     Agencies must make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. 5 U.S.C. § 552(a)(3)(C)-(D). Agency records subject to FOIA are those over which an agency has "custody" and "control." *See Kissinger v. Rep. Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980). An agency has custody over any records that it has either "create[d] or obtain[ed]," regardless of "whether the organization from which the documents originated is itself covered by the FOIA." *U.S. Dep't of Just. v. Tax Analysts,* 492 U.S. 136, 146 (1989) (internal quotations omitted). It has control over records that "have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 145.

32.     In addition, FOIA requires agencies to, upon request, provide status updates on FOIA requests, including "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

33.     If an agency withholds responsive records, in whole or in part, FOIA puts the burden on the agency to demonstrate that an exemption applies and that it outweighs FOIA's policy of disclosure. *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (stating FOIA's "strong presumption in favor of disclosure" places burden on the agency to justify any withholdings or redactions). Even if an exemption applies, an agency may only withhold

responsive records if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

34. If the agency fails to comply with the statutory time limits, the requester is deemed to have exhausted their administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i); 552(a)(6)(E)(ii)(I)–(iii). District courts may enjoin an agency from withholding agency records and "order the production of any agency records improperly withheld." *Id*. § 552(a)(4)(B).

35. District courts may also provide injunctive relief to remedy an agency's policy or practice of violating FOIA where that policy or practice "will impair the party's lawful access to information in the future." *Hajro v. U.S. Citizenship & Imm. Servs*., 811 F.3d 1086, 1103 (9th Cir. 2016).

***The Administrative Procedure Act***

36. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

37. The APA defines "agency action" to include an agency's "failure to act." 5 U.S.C. § 551(13) (internal quotations omitted).

38. A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

39. The reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* §§ 706(1), (2)(A).

**STATEMENT OF FACTS**

*Pre-Inauguration Activities Laying Groundwork for USDS*

40.     On November 12, 2024, President-elect Donald Trump announced that he would establish a new Department of Government Efficiency ("DOGE"), to be led by tech billionaire Elon Musk and former Republican presidential candidate Vivek Ramaswamy.[1] He explained that DOGE's purpose would be to "pave the way for [his] Administration to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies."[2]

41.     On November 14, 2025, DOGE began publicly recruiting employees. It invited "super high-IQ small-government revolutionaries willing to work 80+ hours per week on unglamorous cost-cutting" to apply.[3]

42.     By January 10, 2025, DOGE reportedly had hired over 50 staffers.[4] On information and belief, DOGE staff conducted numerous interviews with federal agency staff prior to Trump's inauguration, to prepare to implement strategies for dismantling the federal executive branch.[5]

*Executive Orders Establishing Federal DOGE Entities*

43.     On January 20, 2025, inauguration day, President Trump issued an executive order entitled "Establishing and Implementing the President's 'Department of Government Efficiency,'" officially installing DOGE in the federal government and tasking it with "implement[ing] the

---

[1] Donald J. Trump (@realDonaldTrump), X (Nov. 13, 2024, 3:21 AM), https://x.com/realDonaldTrump/status/1856658569124262092. Ramaswamy later announced, on Inauguration Day, that he was stepping down from DOGE.

[2] *Id.*

[3] Department of Government Efficiency (@DOGE), X (November 14, 2024, 7:03 AM), https://x.com/DOGE/status/1857076831104434289.

[4] Faiz Siddiqui et al., *DOGE is Dispatching Agents Across U.S. Government*, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-doge-federalagencies/.

[5] *Id.*; Jonathan Swan et al., *How Elon Musk Executed His Takeover of the Federal Bureaucracy*, N. Y. Times (Feb. 28, 2025), https://www.nytimes.com/2025/02/28/us/politics/musk-federal-bureaucracy-takeover.html.

President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity."[6] The order purports to rename the United States Digital Service as the United States DOGE Service and reorganize it within the Executive Office of the President, led by an Administrator reporting to the White House Chief of Staff.[7] The executive order also purports to establish within the U.S. DOGE Service a "U.S. DOGE Service Temporary Organization," also led by the Administrator, that "shall be dedicated to advancing the President's 18-month DOGE agenda."[8] It also orders each federal agency head to establish a "DOGE Team" of at least four employees at their agency within 30 days, in consultation with the U.S. DOGE Service Administrator.[9]

44.    On February 11, 2025, Trump issued another executive order, entitled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative."[10] It requires each federal agency head to "develop a data-driven plan, in consultation with its DOGE Team Lead, to ensure new career appointment hires are in highest-need areas," and to consult with the agency's DOGE Team Lead on new career appointment hiring decisions.[11] The order prohibits federal agencies from "fill[ing] any vacancies for career appointments that the DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled."[12] It further

---

[6] Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-02005.pdf.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] Exec. Order No. 14210 at § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025), https://www.govinfo.gov/content/pkg/FR-2025-02-14/pdf/2025-02762.pdf.

[11] *Id.*

[12] *Id.*

requires each DOGE Team Lead to "provide the United States DOGE Service (USDS) Administrator with a monthly hiring report for the agency."[13]

45.    On February 26, 2025, Trump issued a third DOGE-related executive order, entitled "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative."[14] The order requires each agency head to work with the agency's DOGE Team Lead to implement a variety of initiatives related to agency spending, including requiring agency employees to submit written justification before approving agency payments or non-essential travel; reviewing "all existing covered contracts and grants" and terminating or modifying them where appropriate "to promote efficiency and advance the policies of [the] Administration"; and freezing agency employee credit cards for 30 days.[15] Under the order, each DOGE Team Lead must provide the USDS Administrator with monthly reports on the agency's contracting activities and its justifications for payments and non-essential travel.[16]

46.    As one district court noted in a pending FOIA case against USDS, "the relevant executive orders appear to endow USDS with substantial authority independent of the President."[17] That court found that the first order establishing USDS "appears to give USDS the authority to implement the DOGE Agenda, not just to advise the President in doing so," and that the second order giving DOGE Team Leads "the power to keep vacant career positions open unless an agency overrides their

---

[13] *Id.*

[14] Exec. Order No. 14222, 90 Fed. Reg. 11095 (Feb. 26, 2025), https://www.govinfo.gov/content/pkg/FR-2025-03-03/pdf/2025-03527.pdf.

[15] *Id.*

[16] *Id.*

[17] *Citizens for Resp. & Ethics in Wash. v. United States Doge Serv.*, 769 F. Supp. 3d 8, Case No. 25-cv-00511, 23 (D.D.C. 2025). While a discovery dispute in the case went up to the U.S. Supreme Court, *United States DOGE Serv. v. Citizens for Resp. & Ethics in Wash.*, 145 S. Ct. 1981, 1982 (2025), the issue of whether USDS exercises substantial independent authority has not yet been decided.

10

COMPLAINT

decision . . . appears to contemplate that [such] authority will be exercised independent of the President."[18]

47.     Between these executive orders, and even the little that is known about how USDS has operated to direct agencies, personnel, and policies far afield from the immediate office of the President, it is apparent that USDS has, and has exercised, substantial authority independent from the President.

*USDS Structure and Personnel*

48.     Despite claiming to be "maximally transparent,"[19] USDS has operated in secrecy and actively obscured information about its structure, personnel, and operations.[20] Thus, the majority of publicly available information about USDS's operations and authority has been obtained through discovery, FOIA requests to other federal agencies, and news reporting.

49.     According to USDS discovery responses in ongoing litigation, DOGE Teams within federal agencies are staffed by: 1) USDS or USDS TO employees detailed to or concurrently employed by the agency; 2) General Services Administration or Office of Personnel Management employees detailed to or concurrently employed by the agency (who may also be concurrently detailed to USDS or USDS TO); or 3) employees of the agencies themselves (who may also be detailed to or concurrently employed by other agencies, including USDS and USDS TO).[21]

---

[18] *Id.* at 23-24.

[19] Stephen Fowler, *Musk claims DOGE is saving taxpayers billions, but the data is unclear*, NPR (Feb. 13, 2025, 5:02 AM), https://www.npr.org/2025/02/11/nx-s1-5290288/doge-savings-billions-contracts-musk-trump.

[20] HSGAC Minority Staff Report, *UNCHECKED AND UNACCOUNTABLE: How DOGE Jeopardizes Americans' Data Without Regard for Law and Congress*, United States Senate Committee On HOMELAND SECURITY & GOVERNMENTAL AFFAIRS (September 2025), https://www.hsgac.senate.gov/wp-content/uploads/DOGE_REPORT_FINAL_7.pdf at 13 (attached hereto as Exhibit A) (Social Security Administration officials interviewed by U.S. Senate staff refused to provide names of DOGE personnel and indicated that the names of DOGE personnel had been removed from the software system the agency uses as its directory and to map its organizational structure.).

[21] *See* Plaintiffs' Statement of Undisputed Material Facts, *AFL-CIO, et al. v. United States Dep't*

50.     USDS has contracts under the Economy Act, 31 U.S.C. § 1535, governing the detail of USDS employees to other federal agencies, and it has conceded to at least one court that USDS falls within the Economy Act's definition of "agency."[22] That court noted that the Economy Act's definition of an agency as "a department, agency, or instrumentality of the United States Government," 31 U.S.C. § 101, is "similar—and similarly broad" to FOIA's definition.[23] The court rejected USDS's "attempt to distinguish the Economy Act's definition of agency from similar definitions in other statutes," including FOIA.[24]

51.     When USDS personnel are employed by or detailed to a federal agency, they have two roles—one as an "agency employee" reporting to an agency supervisor and another as a USDS staffer "consulting with" the agency and reporting to a USDS supervisor.[25]

52.     USDS has claimed that it merely "consults and advises on work done at the agencies" and that "ultimately, all the decisions and all the actual work being done and implemented is done at the agencies by the agency teams and those employed by the agencies."[26]

53.     However, on information and belief, the centralized USDS entities are directing agency actions. Several agencies have stated that they do not have DOGE teams,[27] yet according to news

_of Labor, et al._, No. 25-cv-00339, ECF No. 93-1 (D.D.C. Aug. 27, 2025).

[22] _AFL-CIO v. DOL_, 766 F. Supp. 3d 105, 112 (D.D.C. 2025).

[23] _Id._ at 111.

[24] _Id._ at 112 (noting that in taking the position that it is not an agency under the FOIA, Privacy Act, or APA but is an agency under the Economy Act, USDS views itself as "a Goldilocks entity: not an agency when it is burdensome but an agency when it is convenient," and finding that "plaintiffs ha[d] not shown a substantial likelihood that USDS is not an agency" under the Economy Act).

[25] _See_ Deposition of DOGE Through Kendall Lindemann, 81:3-15, 82:6-13; 82:20-24, 85:2-9, 89:1-13, _AFL-CIO v. DOL_, No. 25-cv-00339 (D.D.C. Apr. 7, 2025) (excerpted and attached hereto as Exhibit B).

[26] _Id._ at 33:22-25, 34:1-4.

[27] _See_ Exhibit C (compiling responses to FOIA requests submitted by American Oversight); _see also_ Plaintiff's Motion for Limited Discovery and Incorporated Statement of Points and Authorities, Am. Oversight, _Am. Oversight v. Dep't of Gov. Efficiency_, No. 25-cv-00409, ECF No. 21 (D.D.C. June 2, 2025), at 15.

reports, those same agencies have had staff or budget cut by DOGE.[28] The only apparent explanation is that the centralized DOGE staff–whose locus is USDS–assumed authority to direct the agencies to make these cuts. *See also, e.g., State of New York v. Trump*, No. 25-cv-01144, 2025 U.S. Dist. LEXIS 32664, at *79-80, (S.D.N.Y. Feb. 21, 2025) ("Although [DOGE agency team members] are nominally agency employees who sit within the Treasury chain of command, it is notable that they also take instructions from officials at USDS/DOGE").[29]

54. Further indicating that USDS has independent authority, the Director of the Office of Administration for the White House has stated under oath that while Musk was "an employee of the White House Office," USDS TO is "within the U.S. DOGE service," and "[b]oth [USDS and USDS TO] are separate from the White House Office."[30]

55. On information and belief, Musk's status as an employee of the White House Office is not determinative of whether he exercised independent authority through directing USDS activities, whether USDS itself has independent authority, or whether USDS holds records related to Musk that are responsive to Sierra Club's request and not exempt from FOIA.

---

[28] Plaintiff's Motion for Limited Discovery and Incorporated Statement of Points and Authorities at 15; Jenna McLaughlin et al., *How Cuts and $1 Payment Limits Are Making Federal Jobs Harder*, NPR (Mar. 20, 2025, 5:00 AM), https://www.npr.org/2025/03/20/nx-s1-5333655/interiordepartment-budget-cuts-doge; Yuki Noguchi, *DOGE Cut a CDC Team As It Was About to Start a Project to Help N.C. Flood Victims*, NPR (Apr. 15, 2025, 9:00 AM), https://www.npr.org/ sections/shots-health-news/2025/04/15/nx-s1-5364897/cdc-disaster-doge-trump-layoffshurricane-helene; Kit Eaton, *DOGE Cuts Force the FDA to Recruit Volunteers to Finish Drug Reviews*, Inc. (Apr. 29, 2025), https://www.inc.com/kit-eaton/doge-fired-drug-testing-experts-thefda-needs-volunteers-to-finish-their-work/91182110.

[29] *See also* Dasha Burns et al., *Trump puts new limits on Elon Musk*, Politico (quoting President Trump's statement indicating that Musk had discretion over agency budgets: that "If they [the agency heads] can cut, it's better. And if they don't cut, then Elon will do the cutting.") (Mar. 6, 2025), https://www.politico.com/news/2025/03/06/trump-cabinet-musk-025093.

[30] Notice by Elon Musk et al. and Declaration of Johsua Fisher, *State of New Mexico et al. v. Elon Musk et al.*, No. 25-cv-00429, ECF No. 24-1 (D.D.C. Feb. 17, 2025) (attached hereto as Exhibit D).

56.    USDS has not disclosed information about the majority of its personnel, so members of the public do not have a clear understanding of the number of people working at USDS, or their names, backgrounds, job titles, or responsibilities. News outlets have compiled lists of people linked to USDS, USDS TO, and DOGE Teams, many of whom have previously worked for one or more of Elon Musk's companies and have no prior experience working in government.[31] According to an investigation conducted by ProPublica, "at least 23 DOGE officials are making cuts at federal agencies that regulate the industries that employed them, potentially posing significant conflicts of interest."[32]

*USDS Operations Post-Inauguration*

57.    Since January 2025, USDS has exercised significant authority, independent of the President, to enact sweeping changes across the federal government.[33]

58.    On information and belief, USDS has directed large-scale reductions in federal workforce, resulting in the termination of hundreds of thousands of employees at the Environmental Protection Agency, Department of Agriculture, Department of Interior, National Park Service, Department of Education, Consumer Financial Protection Bureau, and other agencies.[34]

---

[31] *The People Carrying Out Musk's Plans at DOGE*, N.Y. Times (June 16, 2025) https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html; Shannon Bond et al., *Who is part of Elon Musk's DOGE, and what are they doing?*, NPR (Feb. 7, 2025, 4:23 PM ), https://www.npr.org/2025/02/07/nx-s1-5288988/doge-elon-musk-staff-trump; Avi Asher-Schapiro et al., *Elon Musk's Demolition Crew*, Pro Publica (Feb. 6, 2025, updated Jun. 10, 2025), https://projects.propublica.org/elon-musk-doge-tracker/.

[32] *The DOGE 100: Musk Is Out, but More Than 100 of His Followers Remain to Implement Trump's Blueprint*, ProPublica (June 10, 2025, 3:00 pm), https://www.propublica.org/article/doge-elon-musk-trump-staffers-tracker-update; *see also Elon Musk's Demolition Crew*, *supra* note 31; Jake Pearson, *Musk Adviser May Make as Much as $1 Million a Year While Helping to Dismantle Agency that Regulates Tesla and X,* ProPublica (May 14, 2025), https://www.propublica.org/article/doge-elon-musk-chris-young-cfpb-tesla-x.

[33] *AFL-CIO*, 766 F. Supp. 3d at 111-12 (finding that "USDS is coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, and spending" and concluding that USDS "appears to be an agency" under FOIA and APA because these actions are "not the stuff of mere advice and assistance" to the President).

[34] *The People Carrying Out Musk's Plans at DOGE*, *supra* note 31; Leslie Shapiro et al., *See

14
COMPLAINT

59.    Under Elon Musk's leadership, USDS reportedly orchestrated a deferred resignation offer that the Office of Personnel Management ("OPM") sent to more than two million federal employees, with the subject line "Fork in the Road."[35]

60.    According to the OPM director "the resignation incentives first introduced by the Department of Government Efficiency, or DOGE, accounted for the bulk of the 300,000 departures" of federal government employees anticipated by the end of 2025.[36]

61.    In early February 2025, USDS directed and implemented the dismantling of the U.S. Agency for International Development ("USAID"), placing thousands of agency employees on administrative leave.[37] Musk posted about USDS's involvement on social media, stating: "We spent the weekend feeding USAID into the wood chipper."[38]

---

*inside DOGE's playbook for eliminating DEI*, Wash. Post (February 15, 2025), https://www.washingtonpost.com/politics/interactive/2025/doge-playbook-dei-trump/; Meg Kinnard, *A comprehensive look at DOGE's firings and layoffs so far*, AP News (Feb. 21, 2025, 4:08 PM), https://apnews.com/article/doge-firings-layoffs-federal-government-workers-musk-d33cdd7872d64d2bdd8fe70c28652654; Stephanie Sy et al., *How the National Parks Service is struggling with drastic funding and staffing cuts*, PBS (July 23, 2025, 6:25 PM) https://www.pbs.org/newshour/show/how-the-national-parks-service-is-struggling-with-drastic-funding-and-staffing-cuts.

[35] *Citizens for Resp. & Ethics in Wash.*, 769 F.Supp. 3d at 14 (citing *Nat'l Treasury Emps. Union v. Trump*, No. 25-cv-420, 2025 WL 561080, at *2 (D.D.C. Feb. 20, 2025)); *see also* Will Steakin and Laura Romero, *OPM, implementing Musk's DOGE plans, sends federal workers 2nd 'Fork in the Road' email*, ABC News (Feb. 3, 2025, 12:10 PM), https://abcnews.go.com/US/opm-implementing-musks-doge-plans-sends-federalworkers/story?id=118401375. The "Fork in the Road" subject line is the same language that Elon Musk used in sending a deferred resignation offer to Twitter employees after purchasing the company.

[36] Eileen Sullivan, *Year Will End With 300,000 Fewer Federal Workers, Trump Official Says*, N.Y. Times (Aug. 22, 2025), https://www.nytimes.com/2025/08/22/us/politics/trump-federal-workers.html.

[37] *Citizens for Resp. & Ethics in Wash.*, 769 F.Supp.3d at 14; *see also* Jonathan Landay, *Exclusive: All local workers, US diplomats to be fired from USAID, sources say*, Reuters (Apr. 1, 2025), https://www.reuters.com/world/us/all-local-workers-us-diplomats-be-fired-usaid-sources-say-2025-04-01/.

[38] Elon Musk (@elonmusk), X.com (Feb. 3, 2025 1:54 AM), https://x.com/elonmusk/status/1886307316804263979.

62.    On February 27, 2025, Musk reportedly used OPM systems to send an email to over two million federal employees that instructed them to send a reply documenting their accomplishments for the previous week.[39] In a subsequent social media post, he asserted that any nonresponse would be considered a resignation, in conflict with statements from the President and other officials that responding to the email was not mandatory.[40]

63.    On information and belief, USDS has also been involved in ordering substantial cuts to federal spending. On its website, www.doge.gov, it claims credit for over 13,000 contract cancellations and over 15,000 grant terminations.[41]

64.    For instance, USDS worked with EPA Administrator Lee Zeldin to implement several rounds of spending cuts at the agency, "identif[ying] and cancel[ling]" hundreds of EPA grants.[42] The EPA has also issued guidance that any spending items greater than $50,000 now require approval from an EPA DOGE Team member.[43]

65.    USDS also reportedly developed a spreadsheet targeting dozens of National Park Service grants for termination, totaling roughly $26 million in potential cuts and threatening programs aimed at protecting public lands and combatting climate change.[44]

---

[39] *Citizens for Resp. & Ethics in Wash.*, 769 F.Supp. 3d at 14; Megan Messerly, *Trump backs off Musk's 5 things threat — sort of*, Politico (Feb. 24, 2025, 2:26 PM), https://www.politico.com/news/2025/02/24/trump-back-off-musk-five-things-threat-00205743.

[40] *Id.*; Elon Musk (@elonmusk), X.com (Feb. 24, 2025, 4:06 PM), https://x.com/elonmusk/status/1894177129887404484.

[41] Department of Government Efficiency, Savings, https://doge.gov/savings.

[42] EPA Press Office, *EPA Administrator Lee Zeldin Cancels 400+ Grants in 4th Round of Cuts with DOGE, Saving Americans More than $1.7B* (Mar. 10, 2025), https://www.epa.gov/newsreleases/epa-administrator-lee-zeldin-cancels-400-grants-4th-round-cuts-doge-saving-americans.

[43] Matthew Daly, *New EPA guidance says spending items greater than $50,000 must get approval from DOGE*, AP News (Mar. 7, 2025, 7:10 PM), https://apnews.com/article/trump-doge-epa-spending-musk-zeldin-whitehouse-3a381c3b136fb1b39dc5acd37dc6f28c.

[44] Lisa Friedman, *Trump Administration Is Said to Target Park Service Grants*, N.Y. Times (May 7, 2025), https://www.nytimes.com/2025/05/07/climate/trump-park-service-grants-cuts.html.

16
COMPLAINT

66.     USDS has also accessed sensitive data at numerous federal agencies. For instance, according to a recent minority staff report by the U.S. Senate Committee on Homeland Security and Governmental Affairs, USDS employees obtained "unfettered access" to personal data on all Americans, including Social Security numbers, at the Social Security Administration, and "agency officials allegedly d[id] not have oversight of these DOGE employees' actions."[45] The report documents "[a] clear pattern [that] emerged across agencies -- officials who questioned DOGE were pushed out, and DOGE-affiliated personnel were installed in key positions such as Chief Information Officer. These DOGE associates were then able to grant approval to other DOGE employees to work with sensitive data without restrictions."[46]

67.     On information and belief, USDS-directed cuts to federal workforce and spending have already impacted and likely will continue to adversely impact crucial government services and programs, including those related to public health, environmental safety, land and resource conservation, and clean energy development.[47]

68.     USDS confirmed its role in instituting these changes and others on social media, posting that it "is saving the Federal Government approx. $1 billion/day, mostly from stopping the hiring of people into unnecessary positions, deletion of DEI and stopping improper payments to foreign organizations, all consistent with the President's Executive Orders."[48]

---

[45] HSGAC Minority Staff Report, *supra* note 20, at 2.

[46] *Id.* at 3.

[47] *See, e.g.*, Zack Colman, *'Set up for failure': Trump's cuts bring climate and energy agencies to a standstill, workers say*, Politico (June 17, 2025, 5:00 AM), https://www.politico.com/news/2025/06/17/trumps-energy-cuts-means-agencies-failure-00406526; McLaughlin et al, *supra* note 28; Suzanne Rowan Kelleher, *National Park Service To Be Hit With 1,500 Additional Layoffs And Deep Budget Cuts, Reports Say*, Forbes (May 8, 2025, 12:03 PM), https://www.forbes.com/sites/suzannerowankelleher/2025/05/08/national-park-service-layoffs-budget-cuts/; Jordan Wolman and Natalie Fertig, '*Crazy': Forest Service cuts ignite fear, fury over wildfire risks*, Politico (Apr. 23, 2025, 10:00 AM), https://www.politico.com/news/2025/04/23/crazy-forest-service-cuts-ignite-fear-fury-over-wildfire-risks-00301499. (Attached hereto as Exhibit E).

[48] Department of Government Efficiency (@DOGE), X.com (Jan. 28, 2025 7:20 PM),

69.    President Trump's public statements about USDS further underscore that it is exercising independent authority. For example, on February 20, 2025, he told a group of investors and company executives that he "signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge,"[49] conflicting with the White House's prior in-court representation that Musk "has no actual or formal authority to make government decisions himself."[50] A few days later, Trump posted on social media, "ELON IS DOING A GREAT JOB, BUT I WOULD LIKE TO SEE HIM GET MORE AGGRESSIVE," indicating that rather than merely advising the president, USDS, under Musk's leadership, is making decisions and taking action independently from the president.[51]

*Sierra Club's FOIA Request*

70.    Sierra Club submitted the FOIA request at issue in this Complaint to USDS and USDS TO on July 2, 2025, and USDS received it on July 3, 2025. The request seeks communications between USDS's senior political staff or their administrative assistants and people connected to fossil fuel and other industries, as well as right-wing political interests and media outlets, identified by a list of email domain names attached to the request. *See* Ex. F.

71.    Many of the USDS officials whose communications Sierra Club requested have direct ties to industries regulated by the agencies at which USDS is directing cuts. For example, Elon Musk owns several companies that have been investigated by the National Highway Traffic Safety

---

https://x.com/DOGE/status/1884396041786524032.

[49] Andrea Shalal and Nandita Bose, *Trump Appears to Contradict White House, Says Elon Musk in Charge of DOGE*, REUTERS (Feb. 20, 2025, 9:27 AM), https://www.reuters.com/world/us/trump-appears-contradict-white-house-says-elon-musk-charge-doge-2025-02-20/.

[50] Exhibit D at 1.

[51] Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 22, 2025 8:04 AM), https://truthsocial.com/@realDonaldTrump/posts/114047677181856301.

Administration,[52] Food and Drug Administration,[53] Department of Agriculture,[54] and Consumer Financial Protection Bureau[55]—agencies at which USDS has made significant cuts.[56]

72.    Further, Steve Davis, Marko Elez, Edward Coristine, and Luke Farritor, who, on information and belief, have been employed by or detailed to USDS and have been involved in cuts at various agencies, have all previously worked at one of Musk's companies.[57]

73.    It is urgent to understand the activities of these highly conflicted personnel and inform the public about potential abuses of power. The records that Sierra Club requested will help identify whether USDS is making funding and staffing decisions based not on an actual effort to improve "efficiency," but rather upon the specialized interests of outside parties with influence over the USDS personnel. Armed with this knowledge, Sierra Club, its members, and the general public can work to reverse such cuts and other activities by USDS personnel that are contrary to law and the public interest. *See, e.g.*, 5 C.F.R. § 2635 (federal conflicts of interest regulations); *see also supra* ¶¶63-65, 67 (describing USDS activities impacting environmental and land protection issues, along with energy policy, all issues that Sierra Club monitors closely for its advocacy campaigns).

74.    Sierra Club requested expedited processing of the request and included supporting references demonstrating that there is "urgency to inform the public concerning actual or alleged

---

[52] ODI Resume, National Highway Traffic Safety Administration, U.S. Department of Transportation (Apr. 25, 2024), https://static.nhtsa.gov/odi/inv/2022/INCLA-EA22002-14498.pdf.

[53] Rachael Levy, *Exclusive: Musk's Neuralink faces federal probe, employee backlash over animal tests* (Dec. 6, 2022, 6:57 AM), https://www.reuters.com/technology/musks-neuralink-faces-federal-probe-employee-backlash-over-animal-tests-2022-12-05/.

[54] *Id.*

[55] Bobby Allyn, *Elon Musk's DOGE takes aim at agency that had plans of regulating X*, NPR (Feb. 12, 2025, 5:00 AM), https://www.npr.org/2025/02/12/nx-s1-5293382/x-elon-musk-doge-cfpb.

[56] Laurence Darmiento, *These departments investigating Elon Musk have been cut by DOGE and the Trump administration,* L.A. Times (March 27, 2025, 3:00 AM), https://www.latimes.com/business/story/2025-03-27/elon-musk-trump-doge-conflicts-of-interest.

[57] *The People Carrying Out Musk's Plans at DOGE*, https://www.nytimes.com/interactive/2025/02/27/us/politics/doge-staff-list.html, *supra* note 31.

19
COMPLAINT

Federal Government activity" and Sierra Club is a party "primarily engaged in disseminating information." *See* Ex. F at 4-8; 5 U.S.C. § 552(a)(6)(E)(v)(II).

75.    Sierra Club also requested a fee waiver and provided supporting details demonstrating that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See* Ex. F at 10-13; 5 U.S.C. § 552 (a)(4)(A)(iii).

76.    USDS sent an email on July 14, 2025, purporting to "decline" Sierra Club's FOIA request and asserting that "USDS is subject to the Presidential Records Act, 44 U.S.C.S. § 2201 et seq., and is not subject to FOIA." *See* Ex. G.

77.    On information and belief, USDS has sent similar responses to other FOIA requesters. *See* Ex. H.

78.    On August 12, 2025, Sierra Club sent an email expressing disagreement with the finding that USDS is not subject to FOIA and seeking to confirm that USDS does not have an administrative appeal process. *See* Ex. G. USDS did not reply.

79.    Under the FOIA statutory deadlines, USDS was required to provide Sierra Club with a decision on its request for expedited processing by July 13, 2025. 5 U.S.C. § 552(a)(6)(E)(ii)(I). USDS was also required to respond to Sierra Club's fee waiver request and provide a final determination on whether responsive documents to Sierra Club's FOIA request exist and whether it will release them by August 1, 2025. 5 U.S.C. §§ 552(a)(4)(A)(viii), (a)(6)(A)(i).

80.    As of the date of this Complaint, USDS has failed to provide any final determination that the agency plans to respond to Sierra Club's FOIA request and has not conducted searches nor provided Sierra Club with any responsive documents. *See* 5 U.S.C. § 552(a)(6)(A)(i). USDS has also failed to respond to Sierra Club's requests for expedited processing and fee waiver.

COMPLAINT

81. On information and belief, USDS has failed to make determinations, conduct searches, or produce documents responsive to any of the FOIA requests it has received. As a result, USDS is the subject of numerous ongoing lawsuits based on its FOIA violations.[58]

82. USDS has made clear that it maintains a policy or practice of refusing to comply with FOIA, based on its erroneous position that it is not subject to FOIA. According to USDS Administrator Amy Gleason, USDS "has adopted no FOIA regulations, hired no document processors or reviewers, and has no dedicated budget for [FOIA] activities."[59] It has also failed to designate a Chief FOIA Officer or establish any processes for requesters to submit and track the status of FOIA requests.

83. FOIA provides that an agency's Chief FOIA Officer shall "have agency-wide responsibility for efficient and appropriate compliance with [FOIA]," "monitor implementation of [FOIA]," and "recommend . . . adjustments to agency practices, policies, personnel, and funding as may be necessary to improve its implementation of [FOIA]." 5 U.S.C. § 552(j)(2)(A)-(C). The lack of a Chief FOIA Officer to take responsibility for USDS's FOIA compliance and to monitor and improve its implementation of FOIA inhibits Sierra Club and other requesters' access to documents and will continue to do so in the future.

84. The lack of a system to track the status of FOIA requests submitted to USDS or obtain an estimated date of completion for requests frustrates Sierra Club's ability to efficiently obtain responsive documents from USDS and will continue to do so in the future.

---

[58] *See, e.g.*, *Ctr. for Biological Diversity v. Office of Mgmt. and Budget et al.*, Case No. 25-cv-165 (D.D.C. filed Jan. 20, 2025); *Am. Oversight v. U.S. Dep't of Gov't Efficiency et al.*, Case No. 25-cv-409 (D.D.C. filed Feb. 11, 2025); *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv. et al.*, Case No. 25-cv-00511 (D.D.C. filed Feb. 20, 2025); *The Intercept Media, Inc. v. U.S. Dep't of Gov't Efficiency et al.*, Case No. 25-cv-2404 (S.D.N.Y. filed Mar. 24, 2025); *MSW Media, Inc. et al. v. U.S. DOGE Serv.*, Case No. 25-cv-1933 (D.D.C. filed Mar. 28, 2025); *Project on Gov't Oversight, Inc. v. U.S. DOGE Serv.*, Case No. 25-cv-1295 (D.D.C. filed Apr. 28, 2025).

[59] *See* Declaration of Amy Gleason, *CREW v. USDS*, Case No. 25-cv-00511, ECF 20-2 (D.D.C. Mar. 14, 2025) (attached hereto as Exhibit I), at 5.

85. Sierra Club submitted a FOIA request that is not included in the present litigation to USDS on October 17, 2025, *see* Ex. J, and is likely to submit additional FOIA requests in the future to shed light on USDS's ongoing, behind-the-scenes actions. USDS's continued failure to comply with FOIA will impair Sierra Club's lawful access to documents that may contain critical information about the agency's operations and motivations and how they may impact Sierra Club's mission and advocacy.

## FIRST CAUSE OF ACTION

### Failure to Comply with Mandatory Determination Deadline

86. Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

87. Sierra Club submitted a FOIA request to USDS on July 2, 2025, properly requesting records within the agency's custody and control.

88. Defendants USDS is an agency subject to FOIA and must process FOIA requests pursuant to the requirements of FOIA and agency regulations.

89. Within twenty business days after receipt of a request, FOIA requires the agency to make a determination as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

90. FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

91. More than twenty business days have passed since USDS received Sierra Club's July 2, 2025 FOIA request.

92. USDS has failed to provide Sierra Club with a final and complete determination on its FOIA request, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

93. USDS has failed to produce documents responsive to Sierra Club's FOIA request, in violation of 5 U.S.C. § 552(a)(3)(A).

94. Sierra Club has exhausted the applicable administrative remedies, and is otherwise entitled to obtain the requested records.

**SECOND CAUSE OF ACTION**

**Failure to Grant Expedited Processing**

95. Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

96. Sierra Club properly requested records within USDS's custody and control on an expedited basis.

97. Defendant USDS is an agency subject to FOIA and must process FOIA requests on an expedited basis pursuant to the requirements of FOIA and agency regulations.

98. FOIA requires USDS to decide whether to grant a request for expedited processing and notify the requester of their determination within ten calendar days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

99. USDS failed to issue a determination on the request for expedited processing within the timeframe set by statute.

100. Sierra Club's FOIA request justifies expedited processing under FOIA. *See* Ex. F at 4-8.

101. Sierra Club has exhausted the applicable administrative remedies.

102. Sierra Club is entitled to declaratory and injunctive relief requiring USDS to grant expedited processing of its July 2, 2025 FOIA request.

23
COMPLAINT

## THIRD CAUSE OF ACTION

### Failure to Respond to Fee Waiver Request

103.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

104.    Sierra Club's FOIA request include a detailed fee waiver request demonstrating that Sierra Club meets the criteria to qualify for a fee waiver. *See* Ex. F at 10-13; U.S.C. § 552(a)(4)(A)(iii).

105.    USDS failed to reply to Sierra Club's fee waiver request within the 20-day time limit for responding to FOIA requests allotted by statute.

106.    Sierra Club has exhausted the applicable administrative remedies.

107.    USDS has not given Sierra Club written notice of unusual circumstances, and no unusual or exceptional circumstances exist that might excuse a late response. 5 U.S.C. § 552(a)(4)(A)(viii)(II).

108.    Because USDS failed to comply with FOIA's statutory deadlines, it must provide Sierra Club with responsive records without assessing any fees, and in no event any search or duplication fees. 5 U.S.C. § 552(a)(4)(A)(viii).

## FOURTH CAUSE OF ACTION

### Failure to Promptly Disclose Responsive Records

109.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

110.    USDS has not promptly disclosed records that are responsive to Sierra Club's July 2, 2025 FOIA request. 5 USC § 552(a)(3).

111.    USDS has not asserted that FOIA's statutory exemptions apply to the records that Sierra Club seeks.

24
COMPLAINT

112.    USDS has thereby violated FOIA's requirement that the agency promptly make responsive, non-exempt records available to requesters. 5 U.S.C. § 552(a)(3).

113.    Unless enjoined and made subject to a declaration of Sierra Club's legal rights by this Court, USDS will continue to violate FOIA and Sierra Club's right to receive public records.

## FIFTH CAUSE OF ACTION

### Failure to Conduct an Adequate Search

114.    The previous paragraphs are re-alleged and incorporated by reference.

115.    USDS is required to process Sierra Club's FOIA request in a manner that complies with 5 U.S.C. § 552(a)(3).

116.    USDS has not undertaken searches that are reasonably calculated to locate all records that are responsive to Sierra Club's FOIA request.

117.    USDS has therefore violated FOIA's requirements. 5 U.S.C. § 552(a)(3).

118.    Unless enjoined and made subject to a declaration of Sierra Club's legal rights by this Court, USDS will continue to violate FOIA and Sierra Club's right to receive public records.

## SIXTH CAUSE OF ACTION

### Policy or Practice of Failing to Comply with FOIA's Requirements

119.    The previous paragraphs are re-alleged and incorporated by reference.

120.    USDS maintains a policy or practice of failing to comply with FOIA's mandatory deadline to make determinations as to whether it will comply with a records request and whether it will grant a fee waiver within twenty business days after receipt of a request. 5 U.S.C.§ 552(a)(6)(A)(i).

121.    USDS maintains a policy or practice of failing to comply with FOIA's requirement to undertake searches that are reasonably calculated to locate all records that are responsive to Sierra Club's FOIA request. 5 U.S.C. § 552(a)(3).

122. USDS maintains a policy or practice of failing to comply with FOIA's requirement to promptly make responsive, non-exempt records available to requesters. *Id.* § 552(a)(3).

123. USDS maintains a policy or practice of failing to comply with FOIA's requirement to "establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request" and "establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number." *Id.* § 552(a)(7).

124. USDS maintains a policy or practice of failing to comply with FOIA's requirement to "designate a Chief FOIA Officer." 5 USC § 552(j)(1).

125. These policies or practices have impeded Sierra Club's lawful access to critical records about USDS's operations and motivations, and as a frequent FOIA requester with a strong interest in government accountability and transparency, Sierra Club stands to continue to be harmed in the future by USDS's ongoing practice of violating FOIA.

126. Sierra Club is therefore entitled to relief in the form of a declaratory judgment that USDS is in violation of its statutory responsibilities under FOIA and an injunction compelling USDS to comply with the statutory deadlines for making determinations on FOIA requests and fee waiver requests; undertake adequate searches for responsive documents; promptly disclose non-exempt documents; designate a Chief FOIA Officer; and establish systems for assigning tracking numbers to FOIA requests and providing information about the status of requests using their individualized tracking numbers.

## SEVENTH CAUSE OF ACTION

### Failure to Act in Accordance with Law

127. The previous paragraphs are re-alleged and incorporated by reference. To the extent that the Court finds that FOIA does not authorize relief for any of the foregoing legal violations, Sierra Club seeks such relief under the APA.

128. Under the APA, a court shall "hold unlawful and set aside agency action" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

129. USDS has acted contrary to law in the following respects:

    a. failing to "establish a system to assign an individualized tracking number for each request received" and "a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number," for requests to USDS as required under 5 U.S.C. § 552(a)(7); and

    b. failing to "designate a Chief FOIA Officer who shall be a senior official of such agency," as required under 5 U.S.C. § 552(j)(1).

130. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer injury.

### PRAYER FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against USDS as follows:

1. Declare that USDS is an agency subject to FOIA.

2. Declare that USDS has violated FOIA by failing to make a timely final determination upon Sierra Club's request for expedited processing;

27
COMPLAINT

3. Declare that USDS has violated FOIA by failing to make a timely final determination upon Sierra Club's FOIA request;

4. Declare that USDS has violated FOIA by failing to produce non-exempt records responsive to Sierra Club's FOIA request by the statutory deadlines;

5. Declare that USDS has violated FOIA by failing to designate a Chief FOIA Officer;

6. Declare that USDS has violated FOIA by failing to establish systems for assigning tracking numbers to FOIA requests and providing information about the status of requests;

7. Order that USDS process Sierra Club's FOIA request on an expedited basis;

8. Order that USDS conduct an adequate search for any and all records responsive to Sierra Club's FOIA request and demonstrate that it diligently searched for and identified responsive documents;

9. Order that USDS immediately produce the requested records to Sierra Club at no cost;

10. Order that USDS produce an index identifying any documents or parts thereof that it withholds and the basis for the withholdings, in the event that USDS determines that certain records are exempt from disclosure;

11. Retain jurisdiction over this matter to rule on any assertions by USDS that certain records are exempt from disclosure;

12. Order that USDS comply with the statutory deadlines for making determinations on FOIA requests and fee waiver requests;

13. Order that USDS undertake adequate searches for responsive documents and promptly disclose non-exempt documents;

14. Order that USDS designate a Chief FOIA Officer;

15. Order that USDS establish systems for assigning tracking numbers to FOIA requests and providing information about the status of requests using their individualized tracking numbers.

COMPLAINT

16.    Award Sierra Club its costs and reasonable attorneys' fees; and

17.    Grant such other and further relief as the Court deems just and proper.

Dated: October 29, 2025                     Respectfully submitted,

                                            _/s/ Joya Manjur___
                                            Joya Manjur (CA Bar No. 348160)
                                            SIERRA CLUB
                                            2101 Webster Street, Suite 1300
                                            Oakland, CA 94612
                                            joya.manjur@sierraclub.org
                                            Telephone: (510) 221-6342

                                            Elena Saxonhouse (CA Bar No. 235139)
                                            SIERRA CLUB
                                            2101 Webster Street, Suite 1300
                                            Oakland, CA 94612
                                            elena.saxonhouse@sierraclub.org
                                            Telephone: (415) 977-5765

                                            Andrea Issod (CA Bar No. 230920)
                                            SIERRA CLUB
                                            2101 Webster Street, Suite 1300
                                            Oakland, CA 94612
                                            andrea.issod@sierraclub.org
                                            Telephone: (415) 977-5544

                                            *Attorneys for Plaintiff Sierra Club*